PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ANNETTE CODY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ABT ELECTRONICS, INC., an Illinois corporation,<br><br>Defendant. | Case No. 23STCV06834<br>Assigned to Hon. Elihu M. Berle / Dept. 6<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br>Action filed: April 3, 2023<br>Trial date: None set |

**FIRST AMENDED CLASS ACTION COMPLAINT**

**INTRODUCTION**

**Defendant ABT Electronics, Inc. ("Defendant") secretly enables and allows a third-party spyware company to eavesdrop on the private conversations of everyone who communicates through the chat feature at www.abt.com (the "Website"). The spyware company then exploits and monetizes that data by sharing it with other third parties, who use the private chat data to bombard the unsuspecting visitor with targeted marketing.**

**Defendant does this without visitors' informed consent. As a result, Defendant has violated the California Invasion of Privacy Act ("CIPA").**

**JURISDICTION AND VENUE**

1. As a Court of general jurisdiction, this Court has jurisdiction over all matters presented to it per the mandates of the California Constitution.

2. Venue is proper in this County in accordance with California Code of Civil Procedure § 394(b) because "none of the defendants reside in the state." As such, venue is proper "in any county that the plaintiff may designate in his or her complaint."

3. Defendant is subject to jurisdiction under California's "long-arm" statute found at California Code of Civil Procedure § 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States." Defendant regularly accepts and fulfills orders from California customers. Indeed, Plaintiff Annette Cody ("Plaintiff") believes that Defendant generates a minimum of eight percent of its national Website sales to Californians, such that the website "is the equivalent of a physical store in California." Since this case involves false representations made in part on Defendant's website, California courts can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal.App.5th 1231 (2020).

**PARTIES**

4. Plaintiff is a resident and citizen of California. In February 2023, and while physically within California, Plaintiff visited Defendant's Website using a smart phone and conducted a brief conversation with an agent of Defendant through the Website chat feature. Plaintiff was not advised that the chat was monitored, intercepted, or recorded.

**FIRST AMENDED CLASS ACTION COMPLAINT**

5. Defendant is an Illinois electronics company. It describes itself as the largest independent electronics retailer in the Country, ships to all 50 states, and has over 1,500 employees.

6. Defendant owns, operates, and/or controls the above-referenced Website.

## FACTUAL ALLEGATIONS

7. CIPA prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication. Compliance with CIPA is easy, and most website operators comply by conspicuously warning visitors if their conversations are being recorded, intercepted, or eavesdropped upon.[1]

8. Unlike most companies, Defendant *ignores* CIPA. Instead, Defendant enables and allows an independent third party to eavesdrop on all such conversations. Why? Because, as one industry expert notes, *"Live chat transcripts are the gold mines of customer service. At your fingertips, you have valuable customer insight to make informed business decisions. . .****When people are chatting, you have direct access to their exact pain points.****"*). See https://www.ravience.co/post/improve-marketing-roi-live-chat-transcripts (last visited June 2023) (emphasis added).

9. Defendant's actions are not incidental to facilitating e-commerce, nor are they undertaken in the ordinary course of business. To the contrary, as noted above, Defendant's actions violate industry norms and the legitimate expectations of consumers.

10. To enable the eavesdropping, Defendant has allowed a third party to covertly embed code into Defendant's chat feature. On information and belief, the third party is a company named "Salesforce" and is hereafter referred to as the "Third-Party Spyware Company." The Third-Party Spyware Company runs the chat service from its servers, but customers interact with the chat service on Defendant's Website.

11. The secret code enables and allows the Third-Party Spyware Company to secretly intercept in real time, eavesdrop upon, and store transcripts of Defendant's chat communications with

---

[1] https://www.leechtishman.com/insights/blog/the-california-invasion-of-privacy-act-californias-wiretap-act/ (*"CIPA Compliance is not difficult. A business must take certain steps. . .with a chat feature. . .to ensure that it obtains valid consent consistent with the holdings of courts interpreting CIPA."*) (last visited June 2023) (emphasis added).

- 3 -
**FIRST AMENDED CLASS ACTION COMPLAINT**

unsuspecting website visitors – even when such conversations are private and personal. Defendant neither informs visitors of this conduct nor obtains their consent to these intrusions. The Live Agent Administrator Manual (the "Manual") from Salesforce notes that "Chat transcripts are created automatically and are meant to provide a paper trail about your agents' interactions with customers."

12. The Manual further provides that supervisors can view transcripts in real time. This is accomplished because the contents of the chat are being routed through the Third-Party Spyware Company's webservers in real time, and then sent to Defendant. Thus, through the chat function, the Third-Party Spyware Company is able to record the other electronic communications of visitors to Websites where the code is installed, including the content of all chat communications between the Website and visitors to the Website. Through this process the Third-Party Spyware Company can also track the amount of time spent on the Website, geographic location of the visitor, and other potentially personally identifiable information.

13. One might reasonably wonder why the Third-Party Spyware Company would be interested in intercepting and recording the Website chat interactions between Defendant and unsuspecting visitors to Defendant's Website. As shown below, it all about money.

14. The Third-Party Spyware Company's chat software is "integrated" with Meta, Inc.'s subsidiaries like Facebook and WhatsApp. (Integration allows various software sub-systems to share data to operate as a unified system). According to Bloomerg.com, this is all part of Meta's secret "***plan to profit from private chats.***" As Bloomberg explained, Meta's software integration "*can manage customer messages from multiple services on one central dashboard. That's central to Meta's plan to make money off of its two messaging apps, WhatsApp and Messenger.*" See https://www.bloomberg.com/news/articles/2022-02-15/meta-closes-1-billion-kustomer-deal-after-regulatory-review (last downloaded March 2023).

15. So how does it work? ***First***, Meta identifies "user interests" by monitoring a collection of "offsite" user activity such as Website visits and interactions (including private chat communications between Defendant and visitors) by "integrating" its software with the Third-Party Spyware Company's software. ***Second***, Meta generates revenue by selling advertising space through its subsidiaries' ability to identify those offsite user interests. ***Third and finally***, after the chat

transcripts intercepted by the Third-Party Spyware Company, they are provided to Meta through "integration." Meta brands like Facebook and WhatsApp are then able to bombard the unsuspecting Website visitors with targeted advertising based upon the user's Website visits, communications with the chat feature, and interactions with the Website.

16. Through the preceding acts, one of Meta's subsidiaries freely boasts that it will "Transform your support center into a profit generator." *See* https://www.kustomer.com/product/customer-service/ (last downloaded March 2023).

17. Indeed, all of the schemers – Defendant, the Third-Party Spyware Company, and Meta – all profit from secretly exploiting the private chat data through targeted social media advertising because "*Targeted advertising allows brands to send different messaging to different consumers based on what the brand knows about the customer. The better a brand can demonstrate that it understands what its customers want and need, the more likely customers respond to advertising and engage with the brand. Social media targeting helps brands leverage consumers' behavior on the web, search engines, and social media sites to present ads that reflect consumer interests.*"[2]

18. The Third-Party Spyware Company's exploitation, monetization, use of, and interaction with the data it gathers through the chat feature in real time makes it more than a mere "extension" of Defendant.

19. Given the nature of Defendant's business, visitors may share personal and confidential data and personally identifying information with Defendant via the Website chat feature.

20. In February 2023, Plaintiff visited Defendant's Website and used a smart phone (a cellular telephone with integrated computers to enable web browsing) to engage with the Website's chat feature. As such, Plaintiff's conversations with Defendant were transmitted from "cellular radio telephones" and/or "landline telephones" as defined by CIPA.

21. By definition, Defendant's chat communications from its Website are transmitted to Website visitors by either cellular telephony or landline telephony. *See* https://www.britannica.com/technology/Internet ("How does the Internet work?") ("*The Internet works*

---

[2] *See* https://www.adroll.com/blog/what-is-targeted-advertising#:~:text=Targeted%20advertising%20allows%20brands%20to,and%20engage%20with%20the%20brand (last visited March 2023).

*through a series of networks that connect devices around the world through telephone lines.*") (last visited March 2023).

22. Defendant did not inform Plaintiff of the Class members that Defendant was secretly allowing, aiding, and abetting the Third-Party Spyware Company to intercept and eavesdrop on the conversations during transmission, or that the Third-Party Spyware Company provided data from such transcripts to Meta through "integration" with Meta software.

23. Defendant did not obtain Plaintiff's or the Class members' express or implied consent for the preceding intrusions, nor did Plaintiff or Class members know at the time of the conversations of Defendant's conduct.

## CLASS ALLEGATIONS

24. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons within the United States who within the statute of limitations period: (1) communicated with Defendant via the chat feature on Defendant's Website; and (2) whose communications were recorded and/or eavesdropped upon without prior consent.**

25. <u>NUMEROSITY</u>: Plaintiff believes the number of potential Class members to be in the thousands, if not more. The exact identities of Class members may be ascertained by the records maintained by Defendant.

26. <u>COMMONALITY</u>: Common questions of fact and law exist as to all Class members, and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class member, include but are not limited to the following:

    a. Whether Defendant aided and abetted a third party in eavesdropping on such communications;

    b. Whether Plaintiff and Class members are entitled to statutory penalties; and

    c. Whether Class members are entitled to injunctive relief.

27. <u>TYPICALITY</u>: As a person who visited Defendant's Website and whose electronic communication was recorded, intercepted and eavesdropped upon, Plaintiff is asserting claims that are typical of the Class.

28. <u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

29. <u>SUPERIORITY</u>: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class members is impracticable and inefficient. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

## CAUSE OF ACTION

### Violations of the California Invasion of Privacy Act

### Cal. Penal Code § 631

30. Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, contrivance, or in any other manner," (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," or (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state" or (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section". *Here, Defendant does all three.*

31. Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's and the Class's electronic communications with Defendant's Website. "Though

**FIRST AMENDED CLASS ACTION COMPLAINT**

written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.' *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022).

32. The Third-Party Spyware Company's software embedded on Defendant's Website to record and eavesdrop upon the Class's communications qualifies as a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct alleged herein.

33. At all relevant times, Defendant intentionally caused the internet communication between Plaintiff and Class Members with Defendant's Website to be recorded. Defendant also aided, abetted at least one third party to eavesdrop upon such conversations during transmission and in real time.

34. Plaintiff and Class Members did not expressly or impliedly consent to any of Defendant's actions.

35. Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 631(a), entitling Plaintiff and Class Members to injunctive relief and statutory damages.

36. In a materially identical case, a court recently held that the above-described allegations state viable claims for violations of section 631(a) of CIPA. *See Byars v. The Goodyear Tire & Rubber Co.*, No. 5:22-cv-01358-SSS-KKx, 2023 WL 1788553, *4 (C.D. Cal. Feb. 3, 2023) (Sykes, J.) ("*Byars contends that Goodyear, using a third-party service, "intercepts in real time" a website visitors' chat conversation. Byars alleges that, using the chat conversation, website visitors share sensitive personal information. Because Byars has pled sufficient facts to show the contents of the communications and that the communications were intercepted, Byars has sufficiently stated a claim under § 631(a).*") (emphasis added).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class counsel;
2. An order declaring Defendant's conduct violates CIPA;

3.   An order of judgment in favor of Plaintiff and the Class and against Defendant on the causes of action asserted herein;

4.   An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;

5.   Statutory damages pursuant to CIPA;

6.   Reasonable attorneys' fees and costs; and

All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

Dated: June 23, 2023

PACIFIC TRIAL ATTORNEYS, APC

By: *[signature]*
Scott. J. Ferrell
Attorneys for Plaintiff

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 4100 Newport Place, Suite 800, Newport Beach, CA 92660.

On June 23, 2023, I served the foregoing document described as **FIRST AMENDED CLASS ACTION COMPLAINT** on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

☒ (BY CASE ANYWHERE) I submitted an electronic version of the document(s) to Case Anywhere through the upload feature at www.caseanywhere.com.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on June 23, 2023, at Newport Beach, California.

_____
Mandy K. Jung

**SERVICE LIST**

| | |
|---|---|
| Richard W. Davis | Attorneys for Defendant |
| LAW OFFICES OF RICHARD W. DAVIS | ABT ELECTRONICS, INC. |
| 1901 Avenue of the Stars, Suite 200 | |
| Los Angeles, California 90067 | |
| Telephone: 310-551-4123 | |
| Facsimile: 323-843-9291 | |
| Email: rdavis@richardwdavis.com | |